# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **KAYCEE HOLLAND AND GEORGE HOLLAND INDIVIDUALLY AND ON BEHALF OF THEIR MINOR SON, HUNTER HOLLAND** | **CIVIL ACTION NO. 14-CV-2249** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **EQUIPMENT SERVICES PARTS, INC., ET. AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is a products liability case brought by Plaintiff Kaycee Holland ("Holland") against Defendant Equipment Service Parts, Inc. ("ESP") and Alliance Industrial Corporation ("Alliance") as a result of a workplace injury. Pending before the Court is Alliance's Motion for Summary Judgment. [Doc. No. 23].

For the reasons stated below, Alliance's Motion for Summary Judgment is GRANTED.

### I.    FACTS AND PROCEDURAL HISTORY

Holland worked for Ardagh Glass, Inc., ("Ardagh") at its glass container production facility in Simsboro, Louisiana. On June 5, 2013, Holland severely injured her right arm in a wine bottle packing machine ("the sorter"), which was manufactured by ESP and installed at the Simboro facility in 1995.

Six years preceding the accident, on September 14, 2007, Alliance purchased plans from ESP for (1) equipment, (2) parts and electrical control schedules, and (3) electrical PLC files. *See* [Doc. No. 27, Exh. A, Asset Purchase Agreement (the "Agreement"), p. 8]. Alliance did not purchase the sorter.

Under the Agreement,[1] the assets were purchased "free and clear of all" ESP liabilities.[2] Alliance's officers and directors did not acquire any of ESP's stock, or ownership or membership shares, before or after the Agreement was executed. Gary Garner ("Garner"), President of Alliance, avers that Alliance and ESP are completely separate corporate entities and that Alliance did not assume or acquire any ESP company assets, other than those identified in the Agreement. [Doc. No. 23-4, Exh. B, Affidavit of Gary Garner, ¶¶ 7-12].

On June 5, 2014, Holland filed suit in the Third Judicial District Court for Lincoln Parish against Alliance and ESP, who then removed to this Court. [Doc. No. 4]. According to Holland, Alliance faces liability because it "purchased [ESP], thereby making [Alliance] liable for any and all defects of machinery produced, manufactured and/or distributed by [ESP]." [Doc. No. 1-1, Plaintiffs' Petition, ¶ 2]. The Agreement also contained a non-compete clause, whereby ESP agreed not to compete with Alliance for a period of seven years. [Doc. No. 27, Exh. A, Asset Purchase Agreement, p. 4]. Citing this clause, Holland also argues Alliance faces liability because any repairs made to the sorter after 2007 would have been performed by Alliance. However, Garner avers that Alliance never made any modifications or performed any maintenance or repairs on the sorter. [Doc. No. 23-4, Exh. B, Affidavit of Gary Garner, ¶ 6].

Ardagh and Travelers Property & Casualty Company of America ("Travelers") intervened for recovery of worker's compensation benefits. [Doc. No. 11].

---

[1] The Agreement contained a Virginia choice of law clause. [Doc. No. 27, Exh. A, Asset Purchase Agreement, p. 4, at § 9.04.

[2] The Agreement provides in relevant part that Alliance purchased ESP's assets "free and clear of all liabilities liens or objections of [ESP] or [third parties] claiming an interest against [ESP] as a result of [ESP's] business." *Id.* at 1.

On December 5, 2014, Alliance filed a motion for summary judgment. [Doc No. 23]. Holland and Travelers filed opposition memoranda. [Doc. Nos. 27 & 28]. Alliance replied. [Doc. No. 31].

In her opposition memorandum, Holland argued that the Court should defer ruling on the instant Motion for Summary Judgment because discovery was ongoing. Her request, however, failed to comply with the applicable Federal Rule of Civil Procedure 56(d).[3] Consequently, on June 8, 2015, the Court issued a minute entry instructing Holland to provide an affidavit or declaration under FED. R. CIV. P. 56(d) specifying, by June 15, 2015, the reasons that would justify a delay in ruling. [Doc. No. 37]. Holland did not file an affidavit or declaration within the deadline.

## II. LAW AND ANALYSIS

### A. Choice of Law

Sitting in diversity, this Court is required to apply the Louisiana approach to conflicts of law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Louisiana conflicts doctrine requires

---

[3] That Rule provides:

> **(d) When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, **for specified reasons**, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d) (emphasis added).

that a contractual choice of law clause be given effect "unless there is a statutory or jurisprudential law to the contrary justifying the refusal to honor the contract as written." *Delhomme Indus., Inc. v. Hous. Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982) (internal citations and quotations omitted). The Purchase Agreement between Alliance and ESP contains a valid Virginia choice of law clause, and the parties do not dispute its applicability.

**B.     Alliance's Potential Liability**

Alliance seeks summary judgment on the issue of liability, arguing there are no genuine issues of material fact that its conduct caused the accident. Alliance also contends that it did not assume ESP's liabilities.

*1.     Causation*

Alliance has presented competent evidence that it never maintained, repaired, or in any way dealt with the sorter and, therefore, that it cannot be held liable for Holland's injuries. Holland and Travelers oppose summary judgment on grounds that Alliance *may* have performed maintenance on the sorter because the Agreement contains a non-compete clause between ESP and Alliance, suggesting that any repairs would have been performed by Alliance, not ESP. However, there exists no competent evidence indicating that Alliance performed any maintenance or repairs on the sorter. Consequently, Holland and Travelers can only overcome summary judgment if they generate genuine issues of material fact indicating that Alliance somehow assumed ESP's liabilities.

*2.     Assumption*

Alliance argues that, under Virginia law, they did not assume ESP's past, present, or future liabilities when purchasing the ESP assets in 2007. Holland and Travelers concede that the Agreement validly disclaimed ESP's past liabilities, but argue that the Agreement did not cover

ESP's future liabilities.

The Agreement unambiguously stated that Alliance purchased the assets from ESP "free and clear of **all** liabilities." [Doc. No. 27, Exh. A, Asset Purchase Agreement, p. 1 (emphasis added)]. The Court finds that the phrase is not limited to past obligations. Therefore, Alliance could only be held liable if it somehow otherwise assumed ESP's liabilities.

Generally, under Virginia law, a purchaser of assets is not liable for the debts and liabilities of the seller. *See, e.g.,Trex Co. v. Canton Lumber Co.*, No. 5:01-CV-00009, 2001 WL 543227, at *1 (W.D. Va. May 16, 2001) ("[I]t is well established that, where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor.") (Internal citations omitted). Virginia does allow for successor liability where, in a very specific set of circumstances, the successor implicitly assumes the debts and liabilities of its predecessor. *Id.* However, an implicit assumption "is improper in the face of an explicit declaration to the contrary." *Id.*

Here, Alliance explicitly disavowed all of ESP's liabilities. Therefore, Holland cannot, and does not, argue that an implicit assumption occurred. Even if Holland attempted such an argument, it is clear that Alliance could not have implicitly assumed ESP's liabilities.

Under Virginia law, an implicit assumption of liabilities can only be found if (1) the purchaser expressly or impliedly agreed to assume the seller's liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two parties, (3) the purchaser is "merely a continuation" of the seller corporation, or (4) the transaction is fraudulent in fact. *Precision Franchising LLC v. Pate*, No. 1:07-CV-407 LMB/BRP, 2007 WL 3231551, at *6 (E.D. Va. Oct. 31, 2007) (citing *States Roofing Corp. v. Bush Const. Corp.*,

5

426 S .E.2d 124, 126-27 (Va.1993)).

There is no indication that any of these conditions exist. First, Alliance expressly disavowed ESP's liabilities, and there is no evidence of an implicit agreement between the parties for an assumption of liabilities. Second, there was no *de facto* merger because it is undisputed that Alliance did not acquire any of ESP's stock in the subject transaction. *See Waterford Inv. Servs., Inc. v. Bosco*, No. 3:10-CV-548, 2011 WL 3820723, at *17 (E.D. Va. July 29, 2011) (declining to find a *de facto* merger because there was "no evidence that any stock was ever transferred between the companies."). Third, because Alliance has presented competent, unopposed evidence that it has no stockholders, members or managers in common with ESP, Alliance is not a "mere continuation" of ESP. *See Bizmark, Inc. v. Air Products, Inc.*, 427 F. Supp. 2d 680, 694 (W.D. Va. 2006) ("the key element for an assessment of whether a corporation is merely a continuation of the selling corporation is the common identity of the officers, directors, and stockholders.") (Internal citations and quotations omitted). Finally, there is no allegation or evidence that the Agreement was somehow fraudulent.

### III. CONCLUSION

For the foregoing reasons, Alliance cannot be held liable for Holland's injuries. Therefore, Alliance's Motion for Summary Judgment is GRANTED, and that all claims against Alliance are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 23rd day of June, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE